UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL L. RILEY, III,<br><br>              Plaintiff,<br><br>     v.<br><br>SHEET METAL WORKERS INTERNATIONAL ASSOCIATION,<br><br>              Defendant. | Case No. 1:22-cv-00241-JLT-EPG<br><br>SCREENING ORDER<br><br>ORDER FOR PLAINTIFF TO:<br><br>(1) FILE A FIRST AMENDED COMPLAINT; OR<br><br>(2) NOTIFY THE COURT THAT HE WISHES TO STAND ON HIS COMPLAINT<br><br>(ECF NO. 1)<br><br>THIRTY (30) DAY DEADLINE |

Plaintiff Earl L. Riley, III, is proceeding *pro se* and *in forma pauperis* in this action filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, generally alleging that Defendant Sheet Metal Workers International Association has engaged in discriminatory employment practices. (*See* ECF No. 1, 5). The complaint is now before the Court for screening.

The Court has reviewed Plaintiff's complaint and finds that Plaintiff fails to state any cognizable claims. Plaintiff now has the following options as to how to move forward. Plaintiff may file an amended complaint if he believes that additional facts would state a cognizable claim or claims. If Plaintiff files an amended complaint, the Court will screen that amended complaint in due course. Or Plaintiff may file a statement with the Court that he wants to stand on his complaint and have it reviewed by the District Judge, in which case the Court will issue findings and recommendations to the District Judge consistent with this order.

I. **SCREENING REQUIREMENT**

As Plaintiff is proceeding *in forma pauperis*, the Court screens the complaint under 28 U.S.C. § 1915. (ECF No. 5). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

II. **SUMMARY OF PLAINTIFF'S COMPLAINT**

Around July 2021, Plaintiff was hired as a sheet metal journeyman by Acco Engineered Systems (Acco). (ECF No. 1, p. 2). The supervisor was Joey Hernandez. (*Id.*). Since July 2021, Plaintiff has had to work "alone on jobs that require two or more people" while other workers "are partnered up."[1] (*Id.*). On September 29, 2021, Plaintiff saw a photo "on the office wall that he found highly inappropriate and very offensive." (*Id.*). "It was a monkey wearing construction gear and it was labelled 'Sheet Metal Worker.' As an African American sheet metal worker [Plaintiff] found the photo to be insensitive, offensive, and highly inappropriate." (*Id.*).

---

[1] Minor alterations, such as changing capitalization and correcting misspellings, have been made to Plaintiff's quoted statements without indicating the alterations.

Plaintiff reported seeing the photo to Hernandez and his Local 104 Union representatives, Mike Lopez and David Pena. (*Id.*). He also filed a complaint with the Equal Employment Opportunity Commission (EEOC) "against Acco for their behavior."[2] (*Id.*). However, Lopez and Pena tried to persuade him not to file the complaint, with Lopez even suggesting that Plaintiff "should get over it because everyone experiences discrimination." (*Id.*). But Plaintiff told Lopez and Pena that he would be going forward with his complaint. (*Id.*).

Since filing the complaint, Plaintiff has "not been referred to any jobs that are available and he [has] been denied access to benefits." (*Id.*). Plaintiff has tried to contact Lopez and Pena multiple times but has been unsuccessful. (*Id.*). To date, Plaintiff has not been contacted or assigned employment "even though he is an A list journeyman and he hold[s] priority over B list workers." (*Id.*). No reason has been given for the difference in the treatment Plaintiff has received.

Plaintiff alleges that he has been subjected to different terms and conditions of employment, harassed, and constructively discharged based on his race. (*Id.*). He also asserts that he has been denied job referrals and assignments and discharged in retaliation for the filing of his EEOC complaint. (*Id.*). Lastly, he alleges that "the union did not represent him fairly and in good faith and without discrimination. (*Id.*).

## III.  ANALYSIS

### A.  Pleading Standards

Title VII makes it unlawful for employers, employment agencies, and labor organizations to discriminate against an individual based on the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)-(c).

Plaintiff's complaint does not comply with Federal Rule of Civil Procedure 8 because it does not clearly identify what the Defendant did to discriminate against Plaintiff. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (noting that under Rule 8 a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). Here, Plaintiff sues the Sheet Metal Workers International Association,

---

[2] Plaintiff has attached a copy of a letter dated February 17, 2022, from the EEOC advising him of his right to file a lawsuit.

3

not Acco. However, it is not clear what alleged discrimination Defendant Sheet Metal Workers International Association allegedly engaged in.

Plaintiff's first set of allegations are that, in July 2021, he was hired by Acco, who required him to work alone on jobs requiring two or more people while other sheet metal workers had partners. But it is not clear what role Defendant Sheet Metal Workers International Association had in this decision. Plaintiff also does not allege that he was given this role due to his race, or that the other sheet metal workers who had partners were of a different race.

Plaintiff's second set of allegations are that, on September 29, 2021, he noticed a photo of a monkey dressed in construction gear and labelled as a sheet metal worker "on the office wall" that he felt was "highly inappropriate and very offensive." (ECF No. 1, p. 2). Plaintiff does not say what "office wall" the photo was on, but the context of his complaint makes it appear likely that the photo was located on Acco's office wall. First, Plaintiff states that he immediately reported the photo to the supervisor at Acco, Hernandez (although the Court recognizes that he also reported the photo to Lopez and Pena).[3] Additionally, he states that he filed an EEOC complaint "against Acco for their behavior."[4] (*Id.*). Plaintiff does not allege that Defendant Sheet Metal Workers International Association had any role in putting the photo on the wall, or otherwise endorsing that conduct.

Finally, Plaintiff states that Lopez and Pena tried to dissuade him from filing an EEOC complaint "against Acco," with Lopez even suggesting Plaintiff should get over the incident because everyone experiences discrimination. (*Id.*). Thereafter, Plaintiff "was subjected to different terms and conditions of employment, denied job referrals/assignments, and discharged in retaliation for filing the complaint with the EEOC." (*Id.*). However, it is unclear if it was Acco, or Lopez and Pena, who Plaintiff blames for this conduct. For example, Plaintiff fails to state who discharged him, and, if it was Acco, what role, if any, Defendant played. (*Id.*).

---

[3] While the Court does not ultimately rely on any information outside the complaint for purposes of screening, the Court notes that Plaintiff's application to proceed *in forma pauperis* states that he was working at Acco on September 29, 2021. (ECF No. 3).

[4] Although Plaintiff states that he filed the EEOC complaint against Acco, the "charge of discrimination" form attached to his complaint lists Defendant. Plaintiff should clarify against whom he filed the EEOC complaint if he decides to file an amended complaint. (ECF No. 1, p. 4).

Lastly, even assuming that Lopez and Pena were involved in any of Plaintiff's core allegations, it is important to note that Plaintiff identifies them as Local 104 Union representatives, not employees of Defendant Sheet Metal Workers International Association. While an "employer" also includes "any agent" of the "employer" under 42 U.S.C. § 2000e(b), that Lopez and Pena were employees of Local 104 does not necessary make Defendant, the International Union, liable for their conduct. As the Ninth Circuit has concluded, this determination revolves around agency principles:

> Laughon contends that Local 16 was acting as an agent of the International in discriminating against women, thus making IATSE liable for Local 16's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Common law agency principles determine whether such a relationship exists between an international and one of its locals. *See Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 216, 100 S. Ct. 410, 62 L.Ed.2d 394 (1979) (applying the common law agency test to determine whether an international was liable for an unauthorized strike by its local); *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1427–28 (D.C.Cir.1988) (applying the *Carbon Fuel* test in the context of a Title VII action); *Shimman v. Frank*, 625 F.2d 80, 97-98 (6th Cir.1980). Thus, if the local engages in illegal conduct in furtherance of its role as an agent of the international, the international will be liable for the local's actions. *See Carbon Fuel*, 444 U.S. at 217, 100 S. Ct. 410. However, if the local exercises considerable autonomy in conducting its affairs, it cannot be regarded as an agent of the international, and the international accordingly cannot be held liable under an agency theory for the local's actions. *See Shimman*, 625 F.2d at 97–98.

*Laughon v. Int'l All. of Theatrical Stage Emps., Moving Picture Technicians, Artists & Allied Crafts of the United States & Canada*, 248 F.3d 931, 934–35 (9th Cir. 2001).

In short, Plaintiff's complaint fails to contain sufficient allegations to notify Defendant of the claims against it. Should Plaintiff decide to amend his complaint, he should make sure to specifically identify Defendant's alleged misconduct, keeping in mind the Court's discussion in this order.

**A.   Legal Standards**

Here, Plaintiff generally alleges that he was subjected to discrimination, a hostile work environment (or "harassment"), and constructively discharged. (ECF No. 1, p. 2). Additionally, he alleges that he was retaliated against and "the union," presumably meaning Defendant, did not fairly represent him. (*Id.*). In the event Plaintiff amends his complaint, the Court provides the following legal standards for federal causes of action, which may be relevant to his action:

### 1. Discrimination

Plaintiff alleges that he was "discriminated against because of race." (ECF No. 1, p. 2). To establish a prima facie case of intentional discrimination (known as "disparate treatment") under Title VII, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). While plaintiffs are not required to plead a prima facie case at the screening stage, courts may review the allegations in light of the prima facie elements to determine whether a plaintiff either sufficiently pleads an element of the prima facie case or provides enough factual allegations that can lead the court to plausibly infer each element of the prima facie case. *Thomas v. Sec'y of The United States Dep't of Veterans Affs.*, No. CV2102433JAKRAO, 2021 WL 2593643, at *3 (C.D. Cal. May 19, 2021), *report and recommendation adopted*, No. CV2102433JAKRAO, 2021 WL 2590160 (C.D. Cal. June 23, 2021) (internal citations omitted).

### 2. Hostile work environment/Constructive Discharge

Plaintiff also alleges that he faced harassment "due to his race." (ECF No. 1, p. 2). To establish a prima facie case of a hostile work environment under Title VII, a plaintiff must show that (1) because of his race, (2) he was subjected to unwelcome conduct, (3) that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1016 (9th Cir. 2018).

Plaintiff's complaints of "constructive discharge" relate to his allegations of a hostile work environment. (ECF No. 1, p. 2). "Like a hostile work environment claim, a claim for constructive discharge usually results from a series of discriminatory actions on the part of the employer that are in the nature of a continuing violation: A constructive discharge occurs when a person quits his job under circumstances in which a reasonable person would feel that the conditions of employment have become intolerable." *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998). To establish constructive discharge, a "plaintiff must make a further

showing" beyond a hostile-work-environment claim, establishing "that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004).

### 3. Retaliation

Plaintiff also alleges that he was "subjected to different terms and conditions of employment, denied job referrals/assignments, and discharged in retaliation for filing the complaint with the EEOC." (ECF No. 1, p. 2). To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: "(1) he engaged in a protected activity; (2) he suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).

### 4. Breach of duty of fair representation

Lastly, Plaintiff states that "the union did not represent him fairly and in good faith." (ECF No. 1, p. 2). "The duty of fair representation is a judicially established rule imposed on labor organizations because of their status as the exclusive bargaining representative for all of the employees in a given bargaining unit." *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 n.14 (1983) ("The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative."). And "in order to hold that union conduct breached the duty of fair representation, [a court] must determine either that the union conduct at issue is a discriminatory or bad faith exercise of judgment, or is an arbitrary (meaning wholly irrational, inexplicable, or unintentional) action that substantially injured an employee." *Beck v. United Food & Com. Workers Union, Loc. 99*, 506 F.3d 874, 880 (9th Cir. 2007). Further, to show that a "union's exercise of judgment was discriminatory, a plaintiff must adduce 'substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives.'" *Id.* (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am. v. Lockridge*, 403 U.S.

274, 301 (1971)).

## IV.   CONCLUSION AND ORDER

The Court finds that Plaintiff's complaint fails to state any cognizable claims.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." Accordingly, the Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above.  *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000).  Plaintiff is granted leave to file an amended complaint within thirty days.

If Plaintiff chooses to file an amended complaint, the amended complaint must allege violations under the law as discussed above. Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is advised that an amended complaint supersedes the original complaint, *Lacey v. Maricopa County*, 693 F.3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Alternatively, Plaintiff may choose to stand on this complaint, in which case the Court will issue findings and recommendations to the District judge recommending dismissal of the action consistent with this order.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk of Court is directed to send Plaintiff a complaint for employment discrimination form (Form - *Pro Se* 7);
2. Within thirty (30) days from the date of service of this order, Plaintiff shall either:
   a. File a First Amended Complaint; or
   b. Notify the Court in writing that he wants to stand on his complaint.

3. Should Plaintiff choose to amend his complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:22-cv-00241-JLT-EPG; and

4. Failure to comply with this order may result in the dismissal of this action

IT IS SO ORDERED.

Dated: __March 23, 2022__        /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE